[No. A114855. First Dist., Div. Three. Feb. 26, 2009.]

RENTAL HOUSING ASSOCIATION OF NORTHERN ALAMEDA
COUNTY et al., Plaintiffs, v.
CITY OF OAKLAND, Defendant;
JACQUELINE HOWELL et al., Interveners.

[No. A114919. First Dist., Div. Three. Feb. 26, 2009.]

KUN SAM KIM et al., Plaintiffs and Appellants, v.
CITY OF OAKLAND, Defendant and Appellant;
JACQUELINE HOWELL et al., Interveners and Appellants.

744

**COUNSEL**

Law Office of Steven S. Rosenthal, Steven S. Rosenthal and Steven R. Ruth for Plaintiffs and Appellants.

John A. Russo, City Attorney, Barbara J. Parker, Assistant City Attorney, Dianne M. Millner and Richard F. Illgen, Deputy City Attorneys; and Myron Moskovitz for Defendant and Appellant.

Law Office of Jay B. Koslofsky, Jay B. Koslofsky; Wartelle, Weaver & Schreiber, Paul Wartelle; Law Center for Families and Luz Buitrago for Interveners and Appellants.

**OPINION**

**SIGGINS, J.**—A group of Oakland landlords sought a writ of mandate from the trial court to prohibit enforcement of Oakland's Just Cause for Eviction Ordinance (Ordinance) that was adopted as initiative Measure EE at the general election in November 2002. The trial court determined that certain provisions of the measure are preempted by state law and others are not. The court also concluded that the invalid portions of Measure EE are severable from the rest of the Ordinance and the remainder of the Ordinance may be enforced. Both sides appeal.

■ We affirm the trial court and conclude that a portion of the Ordinance that was not challenged in the trial court is also preempted. Even in light of our determination that an additional portion of Measure EE is invalid, the remainder of the Ordinance remains enforceable.

## FACTUAL AND PROCEDURAL BACKGROUND

Measure EE specifies its purpose is "to defend and nurture the stability of housing and neighborhoods in the City of Oakland by protecting tenants against arbitrary, unreasonable, discriminatory, or retaliatory evictions, thereby maintaining diversity in Oakland neighborhoods and communities while recognizing the rights of rental property owners."[1] (§ 3.) It was "intended to address housing problems in the City of Oakland so as to preserve the public health, safety, and welfare, and to advance the housing

---

[1] Measure EE is codified at Oakland Municipal Code chapter 8.22.300 et seq. We will adopt the convention used by the parties in their briefs and refer to the provisions of the Ordinance by their section numbers designated in the text of the initiative measure rather than in the municipal code. We will also occasionally refer to Measure EE as the Ordinance.

policies of the City with regard to low and fixed income persons, people of color, students, and those needing special protections, such as long-term elderly and disabled tenants." (*Ibid.*) Unlike many other cities' rent control laws, the City of Oakland's (the City) rent *control* ordinance, originally enacted in 1980, did not require landlords to show good cause to evict tenants. The preamble to Measure EE notes, in part, that "recent state laws that eliminate limits on rent increases upon the vacation of rental units provide added economic incentive to evict tenants, such that the number of no cause evictions has increased markedly in recent years," and that "the absence of a local law prohibiting a landlord from evicting a tenant without good cause is a significant barrier to implementation and enforcement of the Oakland Residential Rent Arbitration Ordinance."

To advance the goals expressed in Measure EE, a landlord is required to plead and prove a specified ground for any eviction. (§ 6.A, B(1).) Several of these grounds relate to tenant misuse or misconduct, including nonpayment of rent, violation of the lease or refusal to renew it, causing damage to the premises, disturbance of other tenants, drug activity, and denial of a landlord's access to the unit. (§ 6.A(1)–(7).) Other permitted grounds for eviction are premised on a specified reuse of the property after an owner or landlord recovers possession, including occupancy by the owner or the owner's family members, the making of repairs that cannot be completed while the unit is occupied, or removal of the property from the rental market. (§ 6.A(8)–(11).) Measure EE also provides a tenant a civil remedy when a landlord "wrongfully endeavors to recover possession or recovers possession of a rental unit in violation of [the Ordinance's good cause requirements]," including when a landlord recovers possession but does not follow through on a permissible reuse of the property. (§ 7.A(2).)[2]

In January 2003, Oakland landlords Kun Sam Kim and Mitchell Tannenbaum (appellants) filed their petition for writ of mandate asking the trial court to direct the City to refrain from enforcing the Ordinance.[3] In June 2003, the court permitted Jacqueline Howell, Robert Juba, and Just Cause for

---

[2] The Oakland Housing, Residential Rent and Relocation Board (the Rent Board) subsequently adopted regulations implementing the Ordinance that were considered by the superior court and attached as an appendix to the order here under review.

[3] The Rental Housing Association of Northern Alameda County, a nonprofit association of Oakland landlords, was also a petitioner in the trial court. It settled with the City and interveners while this appeal was pending. At the City's unopposed request, we take judicial notice of documents that include a second set of regulations enacted by the Rent Board and approved by the city council as part of the settlement of the rental housing association's appeal.

Oakland (Interveners) to file a complaint in intervention.[4] Sohini Deo-Chan was added as a petitioner in an amended petition filed in January 2005.

The parties filed cross-motions for summary judgment and summary adjudication. In a detailed 51-page order, the trial court concluded certain portions of the Ordinance were preempted by state law, but that those invalid portions were severable, and the remaining provisions of the Ordinance were valid and enforceable. The court struck several provisions of the Ordinance, including a limitation on rents demanded for certain vacant "replacement units," certain rebuttable presumptions that a landlord violated the Ordinance, the requirement that evictions under the Ellis Act be brought "in good faith, without ulterior reasons and with honest intent," a cause of action in favor of a tenant who has prevailed in an eviction action, and a provision for punitive damages against landlords who violate the Ordinance.[5] The court rejected appellants' other preemption arguments, and severed the invalid provisions of the Ordinance from the remainder. The court also sustained appellants' objections to certain declarations offered by the City because Measure EE's purpose was clear on its face and extrinsic evidence of its meaning was unnecessary.

All parties appealed from the judgment and the appeals are now consolidated. The City and Interveners agree that they will limit the scope of their appeals to the superior court's evidentiary rulings insofar as they may be relevant to oppose appellants in this court. Because we affirm the trial court's conclusion that the relevant provisions of Measure EE are valid, the City's cross-appeal is immaterial to our decision.

---

[4] The complaint in intervention alleged Howell and Juba were residential tenants in Oakland, and Just Cause for Oakland was the proponent of Measure EE.

[5] The City does not contest the trial court's ruling that these provisions of the Ordinance are invalid. Those found invalid were: The rebuttable presumption of bad faith against landlords seeking recovery for their own possession if they own a similar vacant unit (§ 6.A(9)(d)); the requirement that a landlord who evicts under the terms of the Ellis Act (Gov. Code, § 7060 et seq.) does so "in good faith, without ulterior reasons and with honest intent" (§ 6.A(11)); the requirement that landlords seeking recovery for their own possession lease another unit to the tenant at a comparable rate (§ 6.C(1)); rebuttable presumptions that the Ordinance is violated when acts supporting an owner move-in eviction or an eviction for repairs are not initiated within three months after the tenant vacates the unit, when a landlord schedules service of the notice or filing of the action to recover possession in order to avoid offering a tenant a replacement unit, or when permissible, a third party for whom an owner move-in eviction occurred does not occupy the unit for at least 36 consecutive months (§ 6.C(2)); the cause of action in favor of a tenant who prevails in a possessory action brought by the landlord (§ 7.A(1)); and the provision that allows a tenant to claim punitive damages whenever a landlord violates the Ordinance (§ 7.B).

## DISCUSSION

A. *General Legal Principles That Inform Our Review.*

■ When we consider whether Measure EE is fatally preempted by state law, we must bear in mind that: "The scope of the initiative power reserved to the people is to be liberally construed." (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 147 [130 Cal.Rptr. 465, 550 P.2d 1001] (*Birkenfeld*).) ■ There is generally a "strong presumption that legislative enactments 'must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears.' " (*Walker v. Superior Court* (1988) 47 Cal.3d 112, 143 [253 Cal.Rptr. 1, 763 P.2d 852]; accord, *People v. Morgan* (2007) 42 Cal.4th 593, 605 [67 Cal.Rptr.3d 753, 170 P.3d 129].) ■ " '[A]bsent a clear indication of preemptive intent from the Legislature,' we presume that local regulation 'in an area over which [the local government] traditionally has exercised control' is not preempted by state law. [Citation.] 'The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption.' " (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1242 [63 Cal.Rptr.3d 398, 163 P.3d 89] (*Action Apartment*).) "Whether state law preempts a local ordinance is a question of law that is subject to de novo review." (*Roble Vista Associates v. Bacon* (2002) 97 Cal.App.4th 335, 339 [118 Cal.Rptr.2d 295].)

"Under article XI, section 7 of the California Constitution, '[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws.' " (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534]; accord, *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1251 [23 Cal.Rptr.3d 453, 104 P.3d 813].) " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Sherwin-Williams, supra,* at p. 897.) Local legislation "is 'contradictory' to general law when it is inimical thereto." (*Id.* at p. 898.) "A local ordinance is preempted by a state statute only to the extent that the two conflict." (*Action Apartment, supra,* 41 Cal.4th at p. 1243.)

We are also concerned here only with a facial challenge to Measure EE. Accordingly, we will consider only the text of the measure and not whether it may be invalid as applied in certain circumstances. (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].)

B. *Our Analysis of the Preemption Issues Is Guided Primarily by the Decisions of* Birkenfeld *and* Fisher.

In *Birkenfeld* the California Supreme Court upheld municipal rent control and limits on the permissible grounds for eviction. In that case plaintiff

landlords argued that regulation of the grounds for eviction was preempted by state unlawful detainer statutes set forth at Code of Civil Procedure section 1159 et seq. (*Birkenfeld, supra*, 17 Cal.3d at p. 148.) Those code sections make continuation of a tenant's possession after expiration of the term of tenancy a form of unlawful possession. Notwithstanding the unlawful detainer statutes, the Berkeley City Charter was amended to prohibit the eviction of a tenant who was in good standing at the expiration of the term except in certain limited circumstances. (17 Cal.3d at pp. 148–149.)

The Supreme Court held that the unlawful detainer statutes and Berkeley's charter amendments did not conflict because they each served separate purposes: "The purpose of the unlawful detainer statutes is procedural. The statutes implement the landlord's property rights by permitting him to recover possession once the consensual basis for the tenant's occupancy is at an end. In contrast the charter amendment's elimination of particular grounds for eviction is a limitation upon the landlord's property rights under the police power, giving rise to a substantive ground of defense in unlawful detainer proceedings. The mere fact that a city's exercise of the police power creates such a defense does not bring it into conflict with the state's statutory scheme." (*Birkenfeld, supra*, 17 Cal.3d at p. 149.) The court concluded: "Insofar as the charter amendment simply prohibits eviction of tenants who are in good standing except for the expiration of their tenancies, it is a reasonable means of assuring compliance with maximum rent limits and does not conflict with statutory repossession proceedings even though making available a substantive defense to eviction." (*Id.* at p. 152.)

The charter amendment considered by the court in *Birkenfeld* also included a separate requirement that a landlord obtain a certificate of eviction from the rent control board before commencing unlawful detainer proceedings. The court distinguished the requirement to obtain a certificate from the rent control board from the grounds for eviction provisions. The court held that the certificate requirement fatally conflicted with the unlawful detainer statutes because it "raise[d] procedural barriers between the landlord and the judicial proceeding." (*Birkenfeld, supra*, 17 Cal.3d at p. 151.)

■ In *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644 [209 Cal.Rptr. 682, 693 P.2d 261] (*Fisher*), the court reiterated its holding in *Birkenfeld* that "the statutory remedy for recovery of possession does not preclude limitations on grounds for eviction for the purpose of enforcing a local rent control regulation." (*Fisher, supra*, at p. 707.) The court noted that "[t]ypically, rent control schemes include eviction controls that require 'good cause' in order for a landlord to bring an eviction action. Without such controls, 'the security of tenure objectives of rent control laws could be undermined and the threat of eviction could be used to nullify the operation of rent regulations.' " (*Id.* at

p. 693.) The court concluded that all provisions of the ordinance under review were valid and enforceable, except for a provision that created a presumption affecting the burden of proof with regard to the defense of retaliatory eviction. (*Id.* at p. 709.)

The ordinance that was reviewed in *Fisher* restated established law that retaliation could be asserted as a defense to eviction, but went on to provide that any eviction within six months of a tenant's exercise of rights under the ordinance would be presumed to be retaliatory. (*Fisher, supra,* 37 Cal.3d at p. 693 & fn. 54.) The court concluded that this presumption created by the ordinance improperly shifted the burden of proof of the affirmative defense of retaliation from the tenant to the landlord and therefore conflicted with Evidence Code section 500.[6] (37 Cal.3d at pp. 696–698.) Except for the presumption of retaliation "[a]ll other provisions of the ordinance [were] valid and enforceable." (*Id.* at p. 709.)

Thus, under existing law, municipalities may by ordinance limit the substantive grounds for eviction by specifying that a landlord may gain possession of a rental unit only on certain limited grounds. (See *Fisher, supra,* 37 Cal.3d at p. 707; *Birkenfeld, supra,* 17 Cal.3d at p. 149.) But they may not procedurally impair the summary eviction scheme set forth in the unlawful detainer statutes and they may not alter the Evidence Code burdens of proof. (*Birkenfeld, supra,* at p. 151; *Fisher, supra,* at p. 709.)

We will consider each provision of Measure EE challenged by appellants as preempted by state law in light of the rules established in *Birkenfeld* and *Fisher.*

### C. *Preemption of Burden of Proof Provisions.*

Appellants argue that several sections of the Ordinance are preempted by the Evidence Code because they fatally conflict with the code's allocation of the burden of proof. Section 6.A(9)(a) of the Ordinance provides: "Where the owner of record recovers possession under this Subsection (9) [providing for owner move-in evictions], and where continuous occupancy for the purpose of recovery is less than thirty-six (36) months, such recovery of the residential unit shall be a presumed violation of this Ordinance." Section 6.B(1) provides: "The burden of proof shall be on the landlord in any eviction action to which this order [*sic*] is applicable to prove compliance with Section 6

---

[6] Evidence Code section 500 provides: "Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." The *Fisher* court apparently accepted, without further analysis, the plaintiffs' position that proof of retaliation was "essential" to establish the tenant's defense under the ordinance. (*Fisher, supra,* 37 Cal.3d at pp. 697–698.)

[listing permissible grounds for eviction]." Section 6.D(2) provides: "If landlord claims the unit is exempt from this Ordinance, landlord must allege and prove that the unit is covered by one of the exceptions enumerated in Section 5 of this Ordinance. Such allegations must appear both in the notice of termination of tenancy or notice to quit, and in the complaint to recover possession. Failure to make such allegations in the notice shall be a defense to any unlawful detainer action." Appellants contend that each of these provisions is preempted by Evidence Code section 500.

As a threshold argument, the City contends that the possible preemption of these sections was not raised in the trial court and therefore these arguments are waived on appeal.[7] Appellants request that we consider these issues because they present questions of law regarding matters of public concern, which may be raised for the first time on appeal. (See *Fisher, supra,* 37 Cal.3d at pp. 654–655, fns. 2 & 3; *In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227 [30 Cal.Rptr.2d 893].) While we do not condone appellants' failure to address these issues to the trial court, in light of their public importance, we will exercise our discretion to address the merits of appellants' argument. (See *Francies v. Kapla* (2005) 127 Cal.App.4th 1381, 1386 [26 Cal.Rptr.3d 501]; *Yeap v. Leake* (1997) 60 Cal.App.4th 591, 599, fn. 6 [70 Cal.Rptr.2d 680].)

■ Section 6.A of the Ordinance requires that a landlord must be "able to prove" one of 11 specified grounds for eviction. Section 6.A provides: "No landlord shall endeavor to recover possession, issue a notice terminating tenancy, or recover possession of a rental unit in the City of Oakland unless the landlord is able to prove the existence of one of the following [enumerated] grounds . . . ."[8] Section 6.B(1) provides: "The burden of proof shall be on the landlord in any eviction action to which this order [*sic*] is applicable to prove compliance with Section 6." Section 6.D(2) states: "If landlord claims the unit is exempt from this Ordinance, landlord must allege and prove that the unit is covered by one of the exceptions enumerated in Section 5 of this Ordinance. . . ."

■ Appellants argue that sections 6.B(1) and 6.D(2) impermissibly shift the burden of proof because "a landlord's 'just cause' for eviction and the

---

[7] Appellants' writ petition alleged that sections 6.B(1) and 6.D were preempted by state law governing burdens of proof, but the trial court declined to reach those allegations because their preemption was not briefed or argued by the parties.

[8] Rent control ordinances in other jurisdictions contain similar provisions. For example, the Berkeley Rent Stabilization Ordinance provides: "No landlord shall be entitled to recover possession of a rental unit covered by the terms of this chapter unless said landlord shows the existence of one of the following [specified grounds for eviction]." (Berkeley Mun. Code, § 13.76.130A.) Appellants have also asked us to take judicial notice of Proposition M adopted by San Francisco voters in the November 2008 general election. We decline to do so, and their request is denied.

inapplicability of the local rent control ordinance are *not* elements of the cause of action for unlawful detainer. . . ." Instead, appellants say "the *absence* of just cause and the *applicability* of the local ordinance are *affirmative defenses* created by local legislation." Appellants' interpretation contradicts the language of Measure EE that clearly requires a landlord to prove a specified ground for eviction in order to recover possession of a living unit. Nor is appellants' interpretation supported by *Birkenfeld.* There, the court assumed without discussion that the charter amendment in question created a defense for tenants based on retaliatory eviction. The *Birkenfeld* court did not discuss whether the charter amendment imposed a burden of proof on landlords seeking to evict tenants. Cases are not authority for propositions they do not consider. (*Johnson v. Bradley* (1992) 4 Cal.4th 389, 415 [14 Cal.Rptr.2d 470, 841 P.2d 990].)

These sections of Measure EE do not conflict with Evidence Code section 500. They place the burden of proof on the landlord, just as Evidence Code section 500 does, to show the "existence or nonexistence [of facts] essential to the claim for relief" that the landlord asserts in an action for unlawful detainer. (See Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2008) ¶ 8:366, p. 8-128 (rev. # 1, 2007) [landlord would normally have the burden to prove entitlement to recover possession and thus should logically have the burden to prove compliance with ordinance governing grounds for eviction and showing of good cause].)

■ Section 6.D(3) provides that a landlord's failure to allege and prove the unit is exempt from the Ordinance "shall be a defense to any action for possession of a rental unit." Appellants argue that section 6.D(3) impermissibly shifts the burden of proof because it "expressly makes the non-applicability of any exception an *affirmative defense,* but requires the landlord to prove that an exception applies." We discern no logical contradiction between section 6.D(2), which requires a landlord to allege and prove a unit is exempt from the Ordinance as part of the landlord's case-in-chief, and section 6.D(3), which allows the tenant to defend an unlawful detainer action for a landlord's failure to allege and prove required facts. (See *Gross v. Superior Court* (1985) 171 Cal.App.3d 265, 276 [217 Cal.Rptr. 284] [landlord's failure to demonstrate grounds to evict tenants under local rent control ordinance was a valid defense to an unlawful detainer action]; see also Friedman et al., Cal. Practice Guide: Landlord-Tenant, *supra,* ¶ 5:293, p. 5-133 (rev. # 1, 2008) ["An ordinance's characterization of noncompliance as an 'affirmative defense' does not necessarily mean the *tenant* bears the burden of proof on that issue. Compliance with the ordinance *may* be an element of the *landlord's* prima facie case, essential to prevail in an unlawful detainer."].)

In a footnote to their reply brief, appellants suggest that "[e]ven if it were true that the burden of proof were on the landlord, Measure EE's regulation

of the burden of proof would nevertheless be in *direct conflict* with state law because, even it would *duplicate* state law." But appellants provide no analysis to show how these sections of the Ordinance duplicate state law, nor do the cases they cite offer clarification. (*American Financial Services Assn. v. City of Oakland, supra,* 34 Cal.4th at p. 1251 [reciting general principle that "A conflict between state law and an ordinance exists if the ordinance duplicates or is coextensive therewith . . ."]; *Great Western Shows, Inc. v. County of Los Angeles* (2002) 27 Cal.4th 853, 866 [118 Cal.Rptr.2d 746, 44 P.3d 120] [local ordinance prohibiting the sale of firearms and/or ammunition on county property did not duplicate state law]; *Sherwin-Williams Co. v. City of Los Angeles, supra,* 4 Cal.4th at p. 902 [ordinance regulating the display of aerosol paint containers and broad-tipped marker pens not preempted].)

Sections 6.B(1), 6.D(2) and 6.D(3) do not conflict with Evidence Code section 500 and are not preempted.[9]

■ Section 6.A(9)(a), however, is another matter. That section provides: "Where the owner of record recovers possession under this Subsection (9) [for an owner move-in eviction], and where continuous occupancy for the purpose of recovery is less than thirty-six (36) months, such recovery of the residential unit shall be a presumed violation of this Ordinance." The presumption specified in section 6.A(9)(a) is an issue that will arise only in a tenant's posteviction suit against a landlord as authorized by section 7.A of the Ordinance.[10] In such a suit, the tenant seeks damages based on the landlord's violation of the Ordinance for the landlord's failure to occupy the unit following eviction. The tenant must argue the eviction was a pretext, and a showing that the landlord thus violated the Ordinance is an essential part of the tenant's cause of action. The tenant therefore has the burden of proof under Evidence Code section 500 to show the landlord has violated the owner move-in cause for eviction allowed by Measure EE. Section 6.A(9)(a) impermissibly shifts that burden.

The City argues that the presumption created by section 6.A(9)(a) is not preempted by Evidence Code section 500 because it affects only the burden of producing evidence, not the burden of proof. The City says "the landlord is

[9] Because we conclude sections 6.B(1) and 6.D(2) of the Ordinance allocate the burden of proof in a manner that does not conflict with Evidence Code section 500, we do not address the City's argument that those sections should be interpreted to impose only a burden of producing evidence, not a burden of proof.

[10] Section 7.A(2) provides, in relevant part: "Whenever a landlord or anyone assisting a landlord wrongfully endeavors to recover possession or recovers possession of a rental unit in violation of Subsection 6(A), the tenant or Board may institute a civil proceeding for injunctive relief, money damages of not less than three times actual damages (including damages for mental or emotional distress), and whatever other relief the court deems appropriate. . . ."

in the best position to present evidence regarding his own occupancy of the unit, as well as his motive for wanting to move into the unit, so this subsection too appears to impose only a burden of producing evidence." We disagree.[11]

■ To determine whether a part of the Ordinance creates an invalid presumption affecting the burden of proof rather than a presumption affecting the burden of producing evidence, we look at the language in the context of the whole measure. (*Fisher, supra,* 37 Cal.3d at pp. 696–697.) We consider whether the language is consistent with or similar to language in Evidence Code section 604 that regulates the burden of producing evidence.[12] The language of section 6.A(9)(a) is not. There is no language in section 6.A(9) that restricts or nullifies the operative effect of its presumption in the face of contrary evidence.

■ Another consideration under *Fisher* is whether the challenged provision facilitates determination of an eviction action or some other extrinsic goal. (*Fisher, supra,* 37 Cal.3d at pp. 696–697.) If the provision facilitates determination of an eviction action, it may be a permissible presumption. This one does not. Section 6.A(9)(a) appears intended to promote a policy of encouraging landlords to cautiously exercise their right to owner move-in evictions by subjecting them to possible tenant suits for damages where a landlord moves out of a unit within 36 months of evicting a tenant from the unit. In such cases, section 6.A(9)(a) operates to presumptively validate a tenant's claim of wrongful eviction. (See also *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1596–1597 [265 Cal.Rptr. 719] [acknowledging "some force" in argument that ordinance's presumption of bad faith if landlord did not reside in unit for 12 months invalidly shifted burden of proof in tenant's action for wrongful eviction but declining to decide the issue].) Section 6.A(9)(a) conflicts with Evidence Code section 500 and is preempted.

---

[11] The trial court rejected a similar argument when it concluded a parallel provision of section 6.C(2) conflicted with Evidence Code section 500 because it created a presumption affecting the burden of proof. Section 6.C(2) provides in part: "The following shall be considered rebuttably presumptive violations of this Ordinance by the landlord: [¶] . . . [¶] (c) Where the individual (a landlord or qualified relative) for whom the Subsection 6(A)(9) eviction occurred does not occupy a unit for a minimum of thirty-six (36) consecutive months." The City abandoned its cross-appeal of that ruling.

[12] Evidence Code section 604 provides in relevant part: "The effect of a presumption affecting the burden of producing evidence is to require the trier of fact to assume the existence of the presumed fact unless and until evidence is introduced which would support a finding of its nonexistence, in which case the trier of fact shall determine the existence or nonexistence of the presumed fact from the evidence and without regard to the presumption."

### D. *Preemption of Required "Good Faith Motive" for Evictions.*

Section 6.B(2) of the Ordinance provides: "A landlord shall not endeavor to recover possession of a rental unit unless at least one of the grounds enumerated in Subsection 6(A) above is stated in the notice and that ground is the landlord's dominant motive for recovering possession and the landlord acts in good faith in seeking to recover possession." Section 6.D(1) also states, in relevant part: "In any action to recover possession of a rental unit pursuant to Section 6, a landlord must allege and prove the following: [¶] . . . [¶] (b) that the landlord seeks to recover possession of the unit with good faith, honest intent and no ulterior motive . . . ."

 Appellants argue that these good faith and proper motive requirements are preempted by Code of Civil Procedure section 1161, part of the unlawful detainer statute, because they restrict evictions authorized by state law. The City argues the " 'good faith' requirement is crucial to the main purpose of the Ordinance: to prevent landlords from evicting in order to undermine rent control." The Supreme Court made clear in *Birkenfeld* that substantive limitations on eviction that are imposed by local ordinance do not conflict with the procedural purpose served by the unlawful detainer statutes. (*Birkenfeld, supra*, 17 Cal.3d at p. 149.) The requirements of good faith and proper motive imposed by the Ordinance are indeed substantive limitations on eviction that are permissible under *Birkenfeld* and are not procedural mechanisms that would be preempted by the unlawful detainer statutes.

 Appellants also argue that section 6.B(2) would bar an unlawful detainer proceeding based on more than one ground permitted by the Ordinance "because the dual cause of action would establish the absence of a dominant motive as to at least one of the causes of action and the existence of an ulterior motive as to both." Section 6.B(2) requires the landlord to have "at least one of the grounds enumerated in Subsection 6(A)," and the Rent Board's regulations explicitly allow for notices of eviction on more than one permitted basis. (Rent Bd., Regs. for Just Cause for Eviction Ord., § 8.22.360.A.2.b (Just Cause Regulations).) In context, the language of section 6 does not clearly bar all multiple ground evictions. In this facial challenge to Measure EE, we are concerned with whether the statute presents a total and fatal conflict with state law, not whether it may be invalid in a particular circumstance. (See *Tobe v. City of Santa Ana, supra*, 9 Cal.4th at p. 1084.) The dominant motive requirement in section 6.B(2) is not facially invalid and is not preempted.

### E. *Preemption of Attorney Fees Provisions.*

 Section 7 of Measure EE allows a tenant who prevails against a landlord in a wrongful eviction action to obtain an award of attorney fees:

"The prevailing tenant shall be entitled to reasonable attorney's fees and costs pursuant to order of the court." (§ 7.A(2).) Section 7.B states: "Any violation of the provisions of this ordinance or application thereof shall entitle the aggrieved tenant to actual and punitive damages according to proof and costs and attorney's fees."[13]

Appellants argue that these provisions allowing a tenant to recover attorney fees from a landlord are preempted by Code of Civil Procedure section 1021, which states that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." Appellants contend that since the Ordinance is not a "statute," the sections allowing an award of attorney fees therefore conflict with section 1021. But "[a] city ordinance may authorize an award of attorney fees." (*City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 493 [8 Cal.Rptr.3d 75], citing *Segundo v. Rancho Mirage City* (9th Cir. 1989) 873 F.2d 1277, 1278–1279 [attorney fees provision in municipal rent control ordinance was not preempted by § 1021].) In *Narula*, the court upheld an award of attorney fees under a local ordinance that authorized them in connection with the foreclosure of a lien for unpaid costs and penalties based on code enforcement proceedings. (*City of Santa Paula v. Narula, supra*, at pp. 492–493.)[14] This rule was recently followed in *City of Monte Sereno v. Padgett* (2007) 149 Cal.App.4th 1530, 1535 [58 Cal.Rptr.3d 218]. (See also *McHugh v. Santa Monica Rent Control Bd.* (1989) 49 Cal.3d 348, 378–379 [261 Cal.Rptr. 318, 777 P.2d 91] [noting that administrative agencies such as rent control boards "regularly exercise a range of powers designed to induce compliance with their regulatory authority (e.g., imposition of fines or penalties, awards of costs and attorney fees)"].)

Appellants argue that application of *Fisher* requires that we conclude the fee shifting provisions of the Ordinance are preempted. But *Fisher* discusses whether a local ordinance should be deemed a statute "for purposes of deviating from the established rules of evidence relating to burden of proof," and does not consider whether an ordinance may provide for an award of

---

[13] The trial court concluded Measure EE's provision for an award of punitive damages was preempted. The trial court also agreed with appellants that the litigation privilege preempted the right of action created by section 7.A(1) for "[a] tenant who prevails in an action brought by a landlord for possession of the premises . . . ," because it "creates a right of action based on a prior unsuccessful lawsuit, but does not require that the prior lawsuit have been brought without probable cause and with malice [so as to bring it within the exception for malicious prosecution actions] . . . ." The City has abandoned its cross-appeal of those rulings.

[14] While the court also noted that Government Code section 53069.4 authorized the city to enact ordinances to enforce its administrative orders by imposing fines and penalties, the court's holding was not conditioned on the authority of that section of the Government Code. (*City of Santa Paula v. Narula, supra*, 114 Cal.App.4th at pp. 492–493.)

attorney fees. (*Fisher, supra*, 37 Cal.3d at p. 698.) The other cases appellants rely upon are similarly distinguishable. (See *Birkenfeld, supra*, 17 Cal.3d at p. 141, fn. 10 [amendment of city charter is "subject to general laws with respect to matters that are not municipal affairs"]; *DeCelle v. City of Alameda* (1963) 221 Cal.App.2d 528, 532–533 [34 Cal.Rptr. 597] [limitations period applicable to actions created by statute did not apply to liability created by municipal ordinance so as to bar employee's claim for pension benefits].) The attorney fee provisions of Measure EE are not preempted.

### F. *Preemption of Age-related Penalties.*

Section 7.D of measure EE states: "It shall be unlawful for a landlord to refuse to rent or lease or otherwise deny to or withhold from any person any rental unit because the age of a prospective tenant would result in the tenant acquiring rights under this Ordinance. Any person who refuses to rent in violation of the Subsection shall, in addition to any other penalties provided by state or federal law, be guilty of a misdemeanor." Section 6.A(9)(e)(i)(a) prohibits owner move-in evictions of tenants who have lived in a unit for five years or more and are 60 years of age or older. Appellants argue that the misdemeanor provision of section 7.D is preempted by the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

FEHA states that it is the Legislature's intent "to occupy the field of regulation of discrimination in employment and housing" encompassed within its provisions. (Gov. Code, § 12993, subd. (c).) Thus, appellants argue, this express declaration in FEHA preempts the misdemeanor penalty in section 7.D where a landlord refuses to lease or rent to a prospective tenant on account of the prospective tenant's age. But local laws are not preempted by state statutes when they serve different purposes. (*Birkenfeld, supra*, 17 Cal.3d at pp. 148–149.)

The plain language of Measure EE offers special protection from eviction to tenants who are at least 60 years old and have occupied their rental units for five years or more. They may not be the subject of an owner move-in eviction. (§ 6.A(9)(e)(i)(a).) Section 7.D ensures that landlords will not refuse to rent to people of a certain age because they will acquire such rights under the Ordinance. In this way, section 7.D serves to promote the rent and vacancy control objectives of the Ordinance, and is not a general prohibition on age discrimination in housing. Because section 7.D does not have the same purpose as FEHA and does not occupy the same field, it is not preempted. (See *Citizens for Uniform Laws v. County of Contra Costa* (1991) 233 Cal.App.3d 1468, 1473–1475 [285 Cal.Rptr. 456] [county ordinance that barred discrimination against persons with symptoms of AIDS was not

preempted because the purpose of the ordinance was to protect public health (by encouraging people to consent to testing) rather than FEHA's purpose to protect civil rights].)[15]

### G. *Preemption of Warning Notice Requirements.*

Some sections of Measure EE require that tenants be provided notice and an opportunity to cure any offending conduct before a landlord may resort to eviction. Where an eviction is brought due to a tenant's substantial violation of a material term of the tenancy, disorderly conduct, or refusal to allow the landlord access to the unit, the landlord must have provided the tenant prior written notice to cease the offending behavior. (§ 6.A(2), (5), (7).) Similarly, a tenant may be evicted for willfully causing substantial damage to the premises only if, after written notice from the landlord, the tenant "has refused to cease damaging the premises, or has refused to either make satisfactory correction or to pay the reasonable costs of repairing such damage over a reasonable period of time." (§ 6.A(4).) The warning notices are to "be served by the landlord prior to a notice to terminate tenancy," and they must "include a provision informing tenant that a failure to cure may result in the initiation of eviction proceedings." (§ 6.B(4).) Section 6.B(6), D(2), and B(7) of Measure EE impose certain content requirements on a notice to terminate tenancy and require that a copy of the notice be filed with the Rent Board.

Appellants argue that these notice requirements operate as procedural barriers to the prosecution of unlawful detainer proceedings and are therefore preempted under *Birkenfeld*. We disagree.

The warning notice requirements in Measure EE limit a landlord's right to initiate an eviction due to certain tenant conduct by requiring that the specified conduct continue after the landlord provides the tenant written

---

[15] An alternative ground on which section 7.D may be upheld, should one consider the underlying purpose of the provision to be the prevention of age discrimination, is that age discrimination is not prohibited by the FEHA, and FEHA preempts only "the field of regulation of discrimination in employment and housing *encompassed by the provisions of* [that statute]." (Gov. Code, § 12993, subd. (c), italics added.) Age discrimination in housing has been the province of the Unruh Civil Rights Act (Civ. Code, § 51) and not primarily the FEHA. Construing Government Code section 12993, subdivision (c) to limit the preemptive reach of the FEHA to discrimination on the basis of the grounds explicitly covered by the FEHA, which do not include age discrimination, is consistent with the decision in *San Jose Country Club Apartments v. County of Santa Clara* (1982) 137 Cal.App.3d 948, 952 [187 Cal.Rptr. 493], but inconsistent with the decision in *Delaney v. Superior Fast Freight* (1993) 14 Cal.App.4th 590, 596–598 [18 Cal.Rptr.2d 33]. We question the decision in *Delaney* that FEHA preempts local regulation of all forms of employment and housing discrimination, whether or not the FEHA itself applies to the particular basis for the discrimination. This interpretation of the statute deprives the qualification italicized above of any meaning.

notice to cease. These notice requirements thus regulate the substantive grounds for eviction, rather than the procedural remedy available to the landlord once grounds for eviction have been established.[16] If the tenant ceases the offending conduct once notified by the landlord, there is no good cause to evict. The requirements for a warning notice are therefore not preempted by the unlawful detainer statutes. As the court stated in *Birkenfeld*, a city, pursuant to its police power, may place substantive limitations on otherwise available grounds for eviction, but not procedural ones. (*Birkenfeld*, *supra*, 17 Cal.3d at pp. 147–149.) Unlike the certificate of eviction that was invalidated in *Birkenfeld*, the warning notice requirements of Measure EE do not involve prefiling review by a local administrative agency or impose "elaborate prerequisites" on the commencement of an unlawful detainer proceeding. (*Birkenfeld*, at pp. 150–151; see also *Roble Vista Associates v. Bacon*, *supra*, 97 Cal.App.4th at p. 342 [requirement that landlord offer every prospective tenant a one-year lease not preempted because it provided substantive defense to eviction and did not interfere with procedure for bringing an unlawful detainer action]; *Citizens for Uniform Laws v. County of Contra Costa*, *supra*, 233 Cal.App.3d at p. 1475 ["The mere fact that the two sets of legislation employ similar regulatory tools . . . does not mean they occupy the same field."].)

Appellants also argue that the warning notice provisions are void for vagueness because the Ordinance does not specify the time a tenant must be provided to cure the violation before a landlord may commence an eviction.[17] A requirement that a tenant be given a reasonable time to cure may be implied in this context. (See *Rutherford v. State of California* (1987) 188 Cal.App.3d 1267, 1276 [233 Cal.Rptr. 781] ["a statutory provision will not be declared void for uncertainty if any reasonable and practical construction can be attached to the language"]; *People v. Morgan*, *supra*, 42 Cal.4th at p. 606 [reasonableness standard not impermissibly vague]; see also Civ. Code, § 798.56, subd. (a) [permitting eviction from mobilehome park when resident has been given "a reasonable time" after receiving a notice of noncompliance].) Moreover, amendments to the Just Cause Regulations adopted by the Rent Board specify that a warning notice "must give the tenant at least 7 days after service to cure the violation. If the violation presents an immediate and substantial danger to persons or the property[,] the landlord may give the tenant a notice that the violation must be corrected within 24 hours after service of the notice." (Just Cause Reg., § 8.22.360B.4.g.) Any arguable

---

[16] To the extent that Measure EE may describe limitations on a landlord's right to evict tenants as "both substantive and procedural" (see § 6.D(3)), we consider the effect of the measure and not the label provided in the Ordinance.

[17] While appellants raise this argument for the first time on appeal, and the City contends it is therefore waived, we consider and reject it on the merits.

vagueness in the Ordinance regarding the timing of a tenant's opportunity to cure has thus been clarified and corrected.[18]

## H. *Preemption of Substantive Provisions of the Ordinance.*

Appellants also challenge several provisions of Measure EE that limit the substantive basis for an eviction. They argue that section 6.A(1), (2), (4), (5) and (7) contain substantive requirements that conflict with state law. They say that section 6.A(1) is different than state law because it requires a landlord to correctly state the amount of rent then due when evicting a tenant for nonpayment. They argue that under state law a valid notice need not specify the exact amount of rent due. They also argue that the notice provision of section 6.A(2) conflicts with state law because "it prevents a landlord from terminating a tenancy for even the most significant and/or malicious breach." Section 6.A(4) and (5) are claimed to be invalid because they prevent a landlord's ability to evict a tenant for waste or damage that would otherwise be cause for eviction under state law. Finally, section 6.A(7) provides that denial of a landlord's access to the leased premises is not actionable until after the tenant has been given notice to cease. All of these provisions are within the specified good cause grounds for eviction in Measure EE. (§ 6.A.) Appellants say that this section is preempted because it conflicts with the grounds for eviction specified in the unlawful detainer statutes and the statutes that define nuisance and waste.

 But, as the Supreme Court held in *Fisher* and *Birkenfeld*, the purpose of the unlawful detainer statutes is procedural, and they do not preempt municipal limitations on grounds for eviction that aid in enforcing local rent control legislation. (*Fisher, supra,* 37 Cal.3d at pp. 706–707, quoting *Birkenfeld, supra,* 17 Cal.3d at pp. 148–149; see also *Roble Vista Associates v. Bacon, supra,* 97 Cal.App.4th at p. 342; *Gross v. Superior Court, supra,* 171 Cal.App.3d at p. 272.) Thus, a local rent control ordinance may permissibly eliminate a ground for eviction specified in Code of Civil Procedure section 1161 without creating a conflict with the unlawful detainer statutes. (*Fisher, supra,* at p. 707 [no preemption of rent withholding provision of local ordinance that "effectively eliminate[d] one ground for eviction"

---

[18] We are not persuaded by appellants' argument that the Rent Board lacks the authority to adopt regulations to aid in the efficient administration of Measure EE. The Rent Board has authority in its originating ordinance to "develop rules and procedures to implement [that ordinance], which shall be approved by the City Council." (See *Danekas v. San Francisco Residential Rent Stabilization & Arbitration Bd.* (2001) 95 Cal.App.4th 638, 644 [115 Cal.Rptr.2d 694] [regulations are generally presumed to be reasonable and lawful, and power to promulgate regulations to achieve goals of rent ordinance included those necessary to effect subsequent amendments to ordinance].) Moreover, the Oakland City Council specifically approved the amended regulations. In doing so, the city council stated that "the Just Cause Ordinance authorizes the Rent Board to adopt regulations implementing the Just Cause Ordinance, without approval by the City Council."

otherwise available under § 1161]; *Birkenfeld, supra,* at pp. 148–149 [no preemption of elimination of ground for eviction based on termination of the tenancy under § 1161]; see also *Gross v. Superior Court, supra,* at p. 271 ["[s]ince section 1161 does not preempt a defense to an unlawful detainer action based upon rent control legislation, it follows that section 1161a [extending unlawful detainer remedy to property sold through foreclosure] also does not preempt a defense"].) Appellants' argument that the Ordinance does not permit evictions for waste or nuisance in exact accordance with the provisions of section 1161, subdivision 4 is therefore beside the point. To the extent that Measure EE places substantive limits on otherwise available grounds for eviction under section 1161, it is not preempted. (See *Fisher, supra,* at pp. 706–707; *Birkenfeld, supra,* at pp. 148–149.)[19]

Moreover, the section 6.A(2) notice requirement may also be reasonably construed to provide that good cause for eviction exists when a tenant violates material terms of tenancy implied by law, including the obligations not to commit nuisance or waste, and the regulations adopted by the Rent Board to implement the Ordinance so provide.[20] (See *DeYoung v. City of San Diego* (1983) 147 Cal.App.3d 11, 17–18 [194 Cal.Rptr. 722] [court will give municipal legislation "a reasonable and common sense interpretation consistent with the apparent purpose and intention of the lawmakers" and "the construction of a statute by officials charged with its administration is entitled to consideration"].)[21] Any apparent conflict between the terms of the

---

[19] In their reply brief, appellants argue that the court's analysis in *Fisher* and *Birkenfeld* should be applied only to conflicts with Code of Civil Procedure section 1161, subdivision 1, and not to alleged conflicts with other subdivisions of the statute. Case law consistently describes the purpose of the unlawful detainer statutes to be procedural, and does not support appellants' argument that a distinction should be made between different subdivisions of section 1161 when applying precedent construing the purpose of the unlawful detainer statute.

[20] Section 6.A(2) includes as good cause for eviction the following circumstance: "The tenant has continued, after written notice to cease, to substantially violate a material term of the tenancy other than the obligation to surrender possession on proper notice as required by law . . . ." Former regulation 8.22.360.A.2.a provided in part: "A 'material term of the tenancy' of the lease includes obligations that are implied by law into a residential tenancy or rental agreement and are an obligation of the tenant. Such obligations that are material terms of the tenancy include, but are not limited to: [¶] i. The obligation not to commit a nuisance, as the term nuisance may be applicable to a residential tenancy under California Civil Code § 1161 or City of Oakland law. . . . [¶] ii. The obligation not to commit waste, as the term waste may be applicable to a residential tenancy under California Civil Code § 1161." The regulation was approved by the city council in connection with the partial settlement of this appeal, as discussed above.

[21] Appellants contend that the Supreme Court disapproved *DeYoung v. City of San Diego* in *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 15 [78 Cal.Rptr.2d 1, 960 P.2d 1031]. But the Supreme Court's cautionary admonition regarding this language in *DeYoung* dealt with its application to agency statutory interpretation and not the kind of quasi-legislative rule making that led to the City's regulations that apply Measure EE.

Ordinance and the grounds for eviction in the unlawful detainer statutes for nuisance or waste has thus been addressed by implementing regulations.

### I. *Invalidity of Tenant's Damages Remedy.*

Section 7.A(2) of the Ordinance provides: "Whenever a landlord or anyone assisting a landlord wrongfully endeavors to recover possession or recovers possession of a rental unit in violation of [the enumerated grounds for eviction in] Subsection 6(A), the tenant or Board may institute a civil proceeding for injunctive relief, money damages of not less than three times actual damages (including damages for mental or emotional distress), and whatever other relief the court deems appropriate. In the case of an award of damages for mental or emotional distress, said award shall only be trebled if the trier of fact finds that the landlord acted in knowing violation of or in reckless disregard of this Ordinance." Appellants argue that this section of Measure EE is preempted by the litigation privilege and violates the constitutional rights of landlords to petition for redress of grievances. We disagree.

"The litigation privilege, codified at Civil Code section 47, subdivision (b), provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged. This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.' [Citation.] 'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.' [Citation.] The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.' [Citation.] [¶] 'The principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' " (*Action Apartment, supra*, 41 Cal.4th at p. 1241.)

"A threshold issue in determining if the litigation privilege applies is whether the alleged injury arises from a communicative act or noncommunicative conduct." (*Action Apartment, supra*, 41 Cal.4th at p. 1248.) " 'As a general rule, the privilege " 'applies only to communicative acts and does not privilege tortious courses of conduct.' " ' " (*Id.* at p. 1249.)

In *Action Apartment*, the court considered whether the litigation privilege preempted part of the Santa Monica tenant harassment ordinance that authorized civil and criminal penalties against a landlord who maliciously took action against a tenant without a reasonable factual or legal basis. (*Action Apartment, supra*, 41 Cal.4th at pp. 1238–1239 & fn. 1.) The Supreme Court

concluded that a provision that allowed "actions alleging that a landlord had improperly filed an action to recover possession of rental housing," was preempted because it was "inimical to the important purposes of the litigation privilege" and "would severely restrict landlords' freedom of access to the courts." (*Id.* at p. 1243.) The court observed that "An action brought pursuant to this provision of the ordinance is necessarily based on the filing of a legal action, which by its very nature is a communicative act." (*Id.* at p. 1249.) But the court also concluded that a part of the ordinance that permitted suits based on the service of eviction notices was not entirely preempted, because "[a] prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration," and the determination of that question requires a factual inquiry. (*Id.* at pp. 1251–1252.)

 Section 7.A(2) of Measure EE creates a cause of action in favor of a tenant based on a landlord's wrongful attempts to recover possession or recovery of possession in violation of the just cause requirements of the Ordinance. Section 7.B permits a tenant to recover damages for a landlord's violation of Measure EE.[22] On their face, these provisions create liability for a range of conduct that does not *necessarily* include filing a lawsuit to recover possession (such as service of an eviction notice with no intent to proceed to litigation, or constructive eviction by failure to provide heat), or that arise from a landlord's conduct after recovery of possession (such as refusal to allow a tenant to return after an eviction to permit repairs, or re-rental of a unit following an owner move-in eviction). Such acts do not relate to litigation and are not within the conduct protected by the litigation privilege. To the extent that a tenant's suit is brought due to prelitigation communications, the ordinance is not preempted on its face because a determination of whether the litigation privilege applies in those cases will require a factual inquiry. (*Action Apartment, supra,* 41 Cal.4th at pp. 1251–1252.)

It is possible that a landlord could successfully claim the litigation privilege if he or she were to be sued for filing an unsuccessful action to recover possession or for some other protected activity.[23] But the mere possibility that Measure EE can be applied in such a way is not sufficient for us to conclude that it is facially invalid. (See *Tobe v. City of Santa Ana, supra,*

---

[22] Part of section 7.B authorized punitive damages. That part was stricken by the trial court when it determined that Measure EE's punitive damages provisions are preempted. The City does not challenge that conclusion.

[23] In such a case the landlord might also be able to file a special motion to strike pursuant to California's anti-strategic lawsuit against public participation (anti-SLAPP) statute (Code Civ. Proc., § 425.16). (See *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 [67 Cal.Rptr.3d 190] ["The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16."].)

9 Cal.4th at p. 1084.) The potential application of the litigation privilege to defeat certain tenant lawsuits does not demonstrate that Measure EE's tenant remedies are invalid.

The litigation privilege also serves to protect the people's access to the courts, and access to the courts is a component of the constitutional right to petition for redress of grievances. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 321 [46 Cal.Rptr.3d 606, 139 P.3d 2]; *Wolfgram v. Wells Fargo Bank* (1997) 53 Cal.App.4th 43, 52–53 [61 Cal.Rptr.2d 694].) Appellants claim the tenant remedies in Measure EE violate their federal and state constitutional rights to petition.[24] Just as we have concluded that the tenant's damages remedy provided by section 7 is not invalid because it violates the litigation privilege, we also conclude that on its face, it does not violate a landlord's rights to petition for redress of grievances.

■ Appellants rely on a number of cases that considered the constitutionality of statutes prohibiting certain forms of speech or association to argue that the tenant damages remedy in Measure EE is subject to strict scrutiny and can only be upheld if it achieves a compelling state interest and is "narrowly drawn to achieve that goal without application to protected speech." (See *N. A. A. C. P. v. Button* (1963) 371 U.S. 415 [9 L.Ed.2d 405, 83 S.Ct. 328]; *Citizens Against Rent Control v. Berkeley* (1981) 454 U.S. 290 [70 L.Ed.2d 492, 102 S.Ct. 434]; *Gooding v. Wilson* (1972) 405 U.S. 518 [31 L.Ed.2d 408, 92 S.Ct. 1103]; *United States v. Robel* (1967) 389 U.S. 258 [19 L.Ed.2d 508, 88 S.Ct. 419].) Appellants' argument misses its mark. The tenant remedy in section 7.A(2) of Measure EE becomes operative where a landlord has sought to recover possession of a rental unit without good cause. The First Amendment interests involved in private litigation are not advanced by knowingly false or frivolous claims. (*Bill Johnson's Restaurants, Inc. v. NLRB* (1983) 461 U.S. 731, 743 [76 L.Ed.2d 277, 103 S.Ct. 2161].) Since "baseless litigation is not immunized by the First Amendment right to petition" (*ibid.*), the tenant damages remedy may apply to unprotected conduct even where a landlord resorts to the courts.

■ The proper frame of reference for our consideration of appellants' First Amendment challenge is whether section 7 is so substantially overbroad that "in all its applications the statute creates an unnecessary risk of chilling free speech . . . ." (*Secretary of State of MD. v. J. H. Munson Co.* (1984)

---

[24] The First Amendment to the United States Constitution provides in part: "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Article I, section 3, subdivision (a) of the California Constitution provides: "The people have the right to instruct their representatives, petition government for redress of grievances, and assemble freely to consult for the common good."

467 U.S. 947, 967–968 [81 L.Ed.2d 786, 104 S.Ct. 2839].) Section 7.A(2) and B create a tenant remedy for certain landlord conduct and do not expressly limit a landlord's right to petition the courts. In fact, as we said in our discussion of the litigation privilege issues, this section of Measure EE has operative effect in a number of situations that do not include resort to the courts to accomplish an eviction. Such application of section 7.A(2) and B triggers no scrutiny under the First Amendment's right to petition. Neither is the right to petition implicated where a landlord is sued for filing a knowingly false or frivolous claim. Section 7.A(2) creates a cause of action in favor of a tenant when a landlord has acted "wrongfully," and not merely where a landlord has filed an unlawful detainer action or otherwise resorted to the court. While there is a possibility that a landlord's right to petition could be implicated in situations where a landlord is sued by a tenant for a good faith, yet unsuccessful action to recover possession, the landlord's good faith in such cases should immunize him or her from any liability under the Ordinance. (See *Rubin v. Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044]; *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872 [254 Cal.Rptr. 336, 765 P.2d 498].) Thus, we cannot conclude that Measure EE creates an unnecessary risk of chilling free speech in all its applications. It is not unconstitutionally overbroad or facially invalid.

 We also reject appellants' argument, raised for the first time on appeal, that section 7 is void for vagueness. Its provisions are sufficiently certain to notify landlords of what they must do to comply with the Ordinance—they must have good cause for eviction as specified in section 6.A—and it provides a remedy to tenants only when a landlord "wrongfully endeavors to recover possession or recovers possession of a rental unit in violation of [that section]."[25] (See *Fisher, supra,* 37 Cal.3d at p. 702 ["Fair notice, as applied to the present inquiry, requires only that the subsection's terms be described with a reasonable degree of certainty so that an ordinary landlord can understand what conduct is proscribed on his part . . . ."]; *Rutherford v. State of California, supra,* 188 Cal.App.3d at p. 1276 ["statutes will be upheld unless their constitutionality as to vagueness clearly, positively and unmistakably appears"].)

## J. *Severability of the Invalid Provisions of the Ordinance.*

Appellants contend the invalid provisions of the Ordinance are not severable from its remainder and because the Ordinance is not severable, it is therefore void in its entirety. We disagree.

---

[25] Appellants' argument that "Section 7.A(2) is ambiguous because the word 'wrongfully' can be interpreted either as modifying only the word 'endeavors' or as modifying both 'endeavors' and *recovers*" is particularly strained. Appellants offer no explanation that would make the former interpretation plausible within the context of the Ordinance as a whole.

The Ordinance contains a severability clause that states: "If any provision of this ordinance or application thereof is held to be invalid, this invalidity shall not affect other provisions or applications of this chapter which can be given effect without the invalid provisions or applications, and to this end the provisions and applications of this ordinance are severable." (§ 9.) " 'Although not conclusive, a severability clause normally calls for sustaining the valid part of the enactment, especially when the invalid part is mechanically severable. . . . The final determination depends on whether the remainder . . . is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidity of the statute . . . or constitutes a completely operative expression of the legislative intent . . . [and is not] so connected with the rest of the statute as to be inseparable.' " (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 821 [258 Cal.Rptr. 161, 771 P.2d 1247]; see also *Santa Barbara Sch. Dist. v. Superior Court* (1975) 13 Cal.3d 315, 330 [118 Cal.Rptr. 637, 530 P.2d 605] [" 'the general presumption of constitutionality, fortified by the express statement of a severability clause, normally calls for sustaining any valid portion of a statute unconstitutional in part' "].)

The invalid provisions of Measure EE are grammatically, functionally, and volitionally severable from its remaining provisions. (See *Calfarm Ins. Co. v. Deukmejian, supra*, 48 Cal.3d at pp. 821–822.) They are grammatically severable because they constitute "distinct and separate" provisions that can be removed without affecting the wording of any other provisions. (*Id.* at p. 822.) They are functionally severable because their invalidity simply reduces the number of remedies available to tenants and eliminates some presumptions that assist tenants who are alleging a violation of the Ordinance. The removal of these invalid portions of the Ordinance does not affect Measure EE's overall purpose to prohibit evictions that lack just cause, nor does it impair the functionality of the Ordinance's main provisions that limit substantive grounds for eviction and create disincentives thereto. Finally, the invalid provisions are volitionally severable because there is "no persuasive reason to suppose [the invalid provisions were] so critical to the enactment of the [Ordinance] that the measure would not have been enacted in [their] absence." (*Calfarm Ins. Co.*, at p. 822; see also *Santa Barbara Sch. Dist. v. Superior Court, supra*, 13 Cal.3d at p. 332 ["it seems eminently reasonable to suppose that those who favor the proposition would be happy to achieve at least some substantial portion of their purpose . . ."].) Because the invalid portions of Measure EE are severable, appellants have not shown that their removal leaves the Ordinance void in its entirety.

## DISPOSITION

The cause is remanded for further proceedings consistent with our determination that section 6.A(9)(a) of Measure EE is preempted by Evidence Code section 500. The judgment is otherwise affirmed. Each party shall bear its own costs on appeal.

McGuiness, P. J., and Pollak, J., concurred.

The petition of plaintiffs and appellants for review by the Supreme Court was denied June 10, 2009, S171847. Werdegar, J., did not participate therein.