[No. A124154. First Dist., Div. Five. Feb. 1, 2010.]

WOODLAND PARK MANAGEMENT, LLC, Plaintiff and Respondent, v. CITY OF EAST PALO ALTO RENT STABILIZATION BOARD et al., Defendants and Appellants.

916

**COUNSEL**

Vincent Ewing, City Attorney, Rafael E. Alvarado, Jr., Assistant City Attorney; Jarvis Fay Doporto & Gibson, Julie M. Randolph, Andrea J. Saltzman and Rick W. Jarvis for Defendants and Appellants.

Ellman Burke Hoffman & Johnson, Christine W. Griffith, Ivo Keller; Zacks Utrecht & Leadbetter, Andrew M. Zacks and Paul F. Utrecht for Plaintiff and Respondent.

OPINION

**BRUINIERS, J.**—In 1988, the citizens of the City of East Palo Alto adopted by popular vote the Rent Stabilization and Eviction for Good Cause Ordinance (E. Palo Alto Ord. No. 076; RSO). We are asked here to determine whether the RSO permits recovery of attorney fees by a landlord in successful litigation against the City.[1] The trial court held that it does and awarded fees to the landlord. We hold that it does not and reverse the award.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2008, Woodland Park Management, LLC (Woodland Park), which manages residential rental properties subject to the RSO, filed a petition for writ of mandate, pursuant to section 1085 of the Code of Civil Procedure, alleging City had improperly increased a landlord registration fee due under the RSO.[2]

Woodland Park's petition alleged that as of January 1, 2008, the registration fee imposed by City was $135 per unit, but that on June 18, 2008, the Board raised the fee to $240. City failed to send registration fee bills by June 1, as required by Board rule 878. Nonetheless, on June 30, 2008, City refused to accept Woodland Park's payment of $135 per unit. Therefore, Woodland Park alleged that City "refused to comply with its ministerial statutory obligations by: 1) seeking to impose an unreasonable annual increase; and 2) refusing to accept [Woodland Park's] registrations at the then-current rate on the grounds that a future increase [was] in the works."

After briefing and a hearing on the merits, the superior court entered an order granting Woodland Park's petition for writ of mandate. The order provided: "Rule 878 mandates the [Board] to send a fee billing or invoice by June 1st. That is a duty. . . . [¶] . . . [T]he RSO lacks a date for the annual adjustment of the fee, but a reasonable person would expect and assume that it must be before June 1st. [A]nd since the Board did not adjust the registration fee of $135 per unit by June 1, 2008, the Court . . . finds that that fee was in effect on June 1, 2008 and should have been accepted by the City/Rent Board." Accordingly, the trial court issued a writ of mandate, commanding City "to process [Woodland Park's] registrations at the amount in force on June 1, 2008."

---

[1] Appellants are the City of East Palo Alto and the City of East Palo Alto Rent Stabilization Board (the Board) (collectively City).

[2] The RSO is administered by the Board. In order to finance the Board's operations, the RSO requires landlords to file a registration statement and pay a registration fee no later than July 1 of each year. (RSO, §§ 6.L., 8.A–8.C.) The Board is authorized to "make reasonable annual adjustments" to the registration fee. (RSO, § 6.L.)

Woodland Park then filed a motion for attorney fees, relying on section 15.A.5 of the RSO.[3] City opposed Woodland Park's motion on the ground that section 15.A.5 only authorizes the award of attorney fees in actions between landlords and tenants. The superior court granted Woodland Park's motion and awarded Woodland Park $20,037.25 in attorney fees. City appeals from the order granting attorney fees, arguing that section 15.A.5 does not authorize a landlord to recover its attorney fees from City. We agree with the City.

## II. DISCUSSION

City does not challenge the order granting Woodland Park's petition for writ of mandate and appeals only from the attorney fees order. The reasonableness of the amount awarded is also not at issue. Rather, City contends that the trial court erred in construing section 15.A.5 of the RSO to allow a prevailing landlord to recover fees in these circumstances.

### A. *Standard of Review*

■ "California follows the 'American rule,' under which each party to a lawsuit ordinarily must pay his or her own attorney fees. [Citations.]" (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 516 [87 Cal.Rptr.3d 475, 198 P.3d 560].) However, attorney fees are allowed as costs to the prevailing party when authorized by contract, statute, or law. (Code Civ. Proc., §§ 1021, 1032, subds. (a)(4) & (b), 1033.5, subd. (a)(10); Civ. Code, § 1717.) A city ordinance is a law that may provide authority for an award of attorney fees. (*City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, 492–493 [8 Cal.Rptr.3d 75]; *Segundo v. Rancho Mirage City* (9th Cir. 1989) 873 F.2d 1277, 1278–1279.)

■ Interpretation of an ordinance presents a question of law that we review de novo. (*Rubalcava v. Martinez* (2007) 158 Cal.App.4th 563, 570 [70 Cal.Rptr.3d 225]; *Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142 [118 Cal.Rptr.2d 569] ["it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo"].) In interpreting an ordinance or a voter initiative, we rely on the same rules of statutory construction applicable to statutes. (*Professional Engineers in California Government v. Kempton* (2007) 40

---

[3] Woodland Park's petition for writ of mandate had additionally relied on Government Code section 800 and Code of Civil Procedure section 1021.5 in its prayer for attorney fees. However, when Woodland Park later moved for attorney fees, it relied exclusively on section 15.A.5 of the RSO. Thus, we do not further address Government Code section 800 or Code of Civil Procedure section 1021.5.

Cal.4th 1016, 1037 [56 Cal.Rptr.3d 814, 155 P.3d 226]; *County of Humboldt v. McKee* (2008) 165 Cal.App.4th 1476, 1489 [82 Cal.Rptr.3d 38]; *Carson Harbor Village, Ltd. v. City of Carson Mobilehome Park Rental Review Bd.* (1999) 70 Cal.App.4th 281, 290 [82 Cal.Rptr.2d 569].)

■ "The primary duty of a court when interpreting a statute is to give effect to the intent of the Legislature, so as to effectuate the purpose of the law. [Citation.] To determine intent, courts turn first to the words themselves, giving them their ordinary and generally accepted meaning. [Citation.] If the language permits more than one reasonable interpretation, the court then looks to extrinsic aids, such as the object to be achieved and the evil to be remedied by the statute, the legislative history, public policy, and the statutory scheme of which the statute is a part. [Citation.] . . . Ultimately, the court must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and it must avoid an interpretation leading to absurd consequences. [Citation.]" (*In re Luke W.* (2001) 88 Cal.App.4th 650, 655 [105 Cal.Rptr.2d 905].) "If the meaning of the statute remains unclear after examination of both the statute's plain language and its legislative history, then we proceed cautiously to . . . apply 'reason, practicality, and common sense to the language at hand.' [Citation.]" (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 583 [48 Cal.Rptr.3d 340].)

### B. *Statutory Construction of the RSO*

Section 15.A.5 of the RSO has not previously been judicially construed and, accordingly, we begin our inquiry with the language itself.[4] Section 15 of the RSO is entitled "REMEDIES" and provides:

"A. For violation of Rent Ceilings or Failure to Register [¶] If a landlord fails to register in accordance with Section 8 of this Ordinance, or if a

---

[4] Contrary to Woodland Park's suggestion, *Segundo v. Rancho Mirage City, supra*, 873 F.2d 1277 does not shed any light on the issue presented here. In *Segundo v. Rancho Mirage City*, the Ninth Circuit Court of Appeals concluded that the operators of a mobilehome park were entitled to attorney fees from the City of Rancho Mirage under a provision in that city's rent control ordinance. (*Id.* at pp. 1277–1279.) However, in *Segundo v. Rancho Mirage City*, the language of the provision being construed provided that in " 'any action in which the validity of this ordinance or any part thereof is challenged, reasonable attorney's fees shall be awarded to the prevailing party or parties.' " (*Id.* at p. 1278, fn. omitted.) The provision we interpret today is markedly different. (RSO, § 15.A.5.) Likewise, City's reliance on *City of Monte Sereno v. Padgett* (2007) 149 Cal.App.4th 1530 [58 Cal.Rptr.3d 218] is also misplaced. In that case, the City of Monte Sereno was awarded attorney fees after it successfully settled a suit to abate a public nuisance. (*Id.* at p. 1533.) The reviewing court reversed because the provisions of the Monte Sereno Municipal Code, on which the City of Monte Sereno relied, were not a proper basis for an award of attorney fees. (*Ibid.*) One such provision conflicted with state nuisance law, and the other could not be applied retroactively. (*Id.* at pp. 1536–1540.)

landlord demands, accepts, receives or retains any payment in excess of the maximum allowable rent permitted by this Ordinance, *a tenant* may take any take [*sic*] *any or all of the following* actions until compliance is achieved.

"1. *A tenant may* petition the Board for appropriate relief. If the Board, after the landlord has proper notice and after a hearing, determines that a landlord has willfully and knowingly failed to register a rental unit covered by this Ordinance, the Board may authorize the tenant of such rental unit to withhold all or a portion of the rent for the unit until such time as the rental unit is brought into compliance with this Ordinance. After a rental unit is brought into compliance, the Board shall determine what portion, if any, of the withheld rent is owed to the landlord for the period I [*sic*], which the rental was not incompliance [*sic*]. Whether or not the Board allows such withholdings, no landlord who has failed to comply with the Ordinance shall at any time increase rents for a rental unit until such unit is brought into compliance.

"2. *A tenant may* withhold up to the full amount of his or her periodic rent, which is charged or demanded by the landlord under the provisions of this Ordinance. *In any action to recover possession based on nonpayment of rent*, possession shall not be granted where the tenant has withheld rent in good faith under this Section.

"3. *A tenant may seek injunctive relief on behalf of her/himself to restrain the landlord* from demanding or receiving any rent on the unit until the landlord has complies [*sic*] with the terms of this Ordinance.

"4. *A tenant may file a damage suit against the landlord* for actual damages when the landlord receives or retains any rent in excess of the maximum rent allowed under this Ordinance. Upon further proof of a bad faith claim by the landlord or the landlord's retention of rent in excess of the maximum rent allowed by this Ordinance, the tenant shall receive a judgment of up to five hundred dollars ($500) in addition to any actual damages sustained, whichever is greater.

"5. *In any civil proceeding that a landlord or a tenant initiates* to enforce his/her right *under this Ordinance*, the prevailing party shall be entitled to reasonable attorney's fee as determined by the court.

"B. For Violation of Eviction Proceedings. If it is shown in the appropriate court that the event which the landlord claims as grounds to recover possession under Subsection 13.A.9, is not initiated within two-months after the tenant vacates the unit, or it is shown that the landlords [*sic*] claim was false or in bad faith, the tenant shall be entitled to regain possession and to

actual damages. If the landlord's conduct was willful, the tenant shall be entitled to damages in an amount of $500 or three time [*sic*] the actual damages sustained, whichever is greater.

"C. The Board may direct the City Attorney to seek injunctive relief to restrain or enjoin any violation of this Ordinance or of the rules, regulations, orders and decisions of the Board.

"D. If a tenant fails to bring a civil or administrative action within on [*sic*] hundred and twenty (120) days from the date of the first occurrence of a violation of this Ordinance, the Board shall either settle the claim arising from the violation or bring such action. Thereafter, the tenant on whose behalf the Board acted may not bring an action against the landlord in regard to the same violation for which the Board has made a settlement or brought an action. In the event the Board settles the claim it shall be entitled to retain from any payments made by the landlord, the costs incurred in settlement and the tenant aggrieved by violation shall be entitled to the remainder.

"E. A tenant who paid rent more than the legally allowable rent provided under Ordinance 10-83 and/or Ordinance 10-83 30-83 and Ordinance No. 17083, may file a petition for refund against the landlord on a form provided by a the [*sic*] Board." (Italics added.)

### 1. *Ambiguity of the Ordinance*

Woodland Park argues that we need look no further than the express language of section 15.A.5. Woodland Park contends that the language providing for recovery of fees in "any civil proceeding that a landlord or a tenant initiates to enforce his/her right *under this Ordinance*" in section 15.A.5 (italics added) is unambiguous and expressly applies to the petition it filed against City. (See Code Civ. Proc., § 1085 [statutorily classified as a special proceeding of a civil nature]; *In re Head* (1986) 42 Cal.3d 223, 226 [228 Cal.Rptr. 184, 721 P.2d 65] ["the petitioners' claim is of such a nature that it might have been presented in a purely civil proceeding—by petition for writ of mandate or action for declaratory relief . . ."].) It is undisputed that Woodland Park is both a "landlord," as defined under section 4.D of the RSO, and a "prevailing party," and Woodland Park asserts that it successfully vindicated its rights "under this Ordinance"—i.e., the RSO. When this language is viewed in isolation, it is difficult to quarrel with Woodland Park's argument that section 15.A.5 "makes no distinction between proceedings initiated against the City and proceedings initiated against all other parties." Woodland Park relies on the maxim that "[w]here the words of the statute are clear, [courts] may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden v.*

*Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; see also Code Civ. Proc., § 1858.)

The flaw in Woodland Park's argument, however, is that the language of the ordinance is clear and unambiguous *only* if it is read in isolation, apart from the balance of the RSO and apart from the context of section 15. "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]; accord, *Quarterman v. Kefauver* (1997) 55 Cal.App.4th 1366, 1371 [64 Cal.Rptr.2d 741] [statutory language may seem clear in isolation, but may be ambiguous or uncertain in context]; *Mason v. Retirement Board* (2003) 111 Cal.App.4th 1221, 1229 [4 Cal.Rptr.3d 619] [neither statutes nor charter provisions are interpreted in isolation].)

When section 15.A.5 is read in the context of section 15 and the RSO as a whole, we believe it is susceptible of, and consistent with, a more narrow interpretation than Woodland Park urges. City argues that section 15.A.5 applies to any civil proceeding *between* a landlord and a tenant to enforce their respective rights under the RSO.

Section 15 of the RSO is titled "REMEDIES." Section 15.A is titled "For Violation of Rent Ceilings or Failure to Register."[5] The text following this title addresses various remedies for these violations (violations of rent ceilings, failure to register), including civil proceedings, primarily pursued by

---

[5] When interpreting an ordinance or statute, "chapter and section headings cannot be resorted to for the purpose of creating ambiguity when none exists. [Citation.]" (*City of Berkeley v. Cukierman* (1993) 14 Cal.App.4th 1331, 1340 [18 Cal.Rptr.2d 478].) However, when there is ambiguity, organization and section headings may properly be considered in determining intent and " 'are entitled to considerable weight. [Citation.]' [Citations.]" (*People v. Hull* (1991) 1 Cal.4th 266, 272 [2 Cal.Rptr.2d 526, 820 P.2d 1036].) Woodland Park's counsel, at oral argument, asserted that East Palo Alto Municipal Code section 1.01.040 precludes use of headings or captions for this purpose. That section provides that "Title, chapter and section headings contained in this code shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions of any title contained within this code." It does not obviate accepted rules of statutory construction. In any event, it is of little consequence if the RSO's headings are entitled to little weight. (*People v. Jones* (1990) 224 Cal.App.3d 1309, 1314 [274 Cal.Rptr. 527].) It is the *text* of section 15 itself that creates the ambiguity, not the headings alone.

tenants against landlords, as well as civil proceedings brought by landlords against tenants. (RSO, § 15.A.) What section 15 explicitly does not address, however, are civil proceedings initiated by either landlords or tenants against the Board or City. This context provides a strong indication that it was the intent of voters to limit the recoverability of attorney fees, pursuant to section 15.A.5, to proceedings between landlords and tenants.[6] We cannot ignore the language of the entirety of section 15.A, as Woodland Park suggests, by relying on the principle that, in case of a conflict, specific provisions prevail over general provisions. (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1246 [63 Cal.Rptr.3d 398, 163 P.3d 89]; see also Code Civ. Proc., § 1859.) We see no conflict. Accordingly, we conclude that the language of section 15.A.5 is ambiguous and susceptible of both City's and Woodland Park's constructions.

### 2. *Interpretation of the Ordinance*

■ To resolve the ambiguity, we look to other indications of voter intent. City's interpretation is bolstered by the fact a different section of the RSO, section 18, deals with actions by a landlord against the City, providing: "A landlord aggrieved by any action or decision of the Board may seek judicial review in a court of appropriate jurisdiction." Section 18 has no provision for attorney fees to the prevailing party. (See also RSO, § 15.C [permitting the City to seek injunctive relief].) The silence on attorney fees in section 18 is an indication that the electorate did not intend attorney fees to be awarded against City. " 'It is a settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' [Citation.]" (*In re Jennings* (2004) 34 Cal.4th 254, 273 [17 Cal.Rptr.3d 645, 95 P.3d 906]; see *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [25 Cal.Rptr.2d 500, 863 P.2d 745] ["expression of some things in a statute necessarily means the exclusion of other things not expressed"].)

■ We are not persuaded by Woodland Park's argument that "the voters had no reason to include a fee-shifting provision in Section 18 because they had already included one that plainly applies in [section 15.A.5]." (Italics omitted.) This only begs the question—is section 15.A.5 intended to be a stand-alone provision, as Woodland Park argues, independent of the balance

---

[6] City does not contend that section 15.A.5 only applies to the remedies specifically enumerated in section 15.A. City asserts that section 15.A.5 "could apply to any civil action between a landlord and tenant to enforce rights under the RSO, including actions related to evictions (whether or not the tenant has invoked the remedy in Section 15(B)) and actions to recover past payments of 'more than the legally allowable rent' (whether or not the tenant has invoked the remedy to recover such past payments under Section 15(E))."

of section 15? Nor do we agree with the position that section 18 lacks significance because Woodland Park's petition for writ of mandate was initiated under section 1085 of the Code of Civil Procedure, and not under the authority of section 18 of the RSO. Section 1085 of the Code of Civil Procedure does not provide for attorney fees, and section 15.A.5 cannot be construed without reference to the remainder of the ordinance of which it is part. (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].)

In any event, Woodland Park's interpretation is not more consistent with the RSO's purpose than that suggested by the City.[7] Given that the Board generally finances its expenses through the collection of registration fees that are paid by landlords (and indirectly, in part, by tenants) (RSO, §§ 6.L, 8.C, 8.J.),[8] the electorate would have had good reason to insulate City from attorney fee awards like the one made here. Woodland Park itself suggests that the increase in registration fees originally at issue in the underlying writ proceeding was caused by the Board's "mounting legal bills" from prior litigation with Woodland Park.[9] (See *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 701 [209 Cal.Rptr. 682, 693 P.2d 261].) Woodland Park does not explain how the purposes of the RSO would necessarily be better served if the Board were required to pass along, through increased registration fees

---

[7] The RSO provides that its purpose is "to protect residential tenants in the City from unreasonable rent increased [*sic*] by discouraging speculation in rental property and stabilizing rent increases; to protect tenants from arbitrary, discriminatory or retaliatory evictions; and at the same time to assure landlords both a fair return and rental income sufficient to cover costs of maintenance and operating expenses as well as the costs of capital improvements to their rental properties." (RSO, § 3.)

[8] Section 6.L of the RSO provides: "The Board shall finance its reasonable and necessary expenses for its operation without the use of General Fund monies of the City of East Palo Alto except as stated in this subsection, by charging landlords an annual registration fee of thirty dollars ($30) per unit, per year, the Board may make reasonable annual adjustments in the fee. The Board is also empowered to request and receive funding when and if necessary from any available source, except the City of East Palo Alto's General Fund, for its reasonable an [*sic*] necessary expenses, including but not limited to salaries and all other operating expenses." (See also RSO, § 6.D.17.) Section 8.J of the RSO provides, in relevant part: "Fifty percent (50%) of the registration fee may be passed on to tenants."

[9] Woodland Park was formerly known as Page Mill Management, LLC. We are not strangers to disputes involving the RSO between Page Mill Management, LLC, and City. One prior appeal, which became the subject of an unpublished appellate opinion, involved a dispute over how rent increases are to be calculated when the rent charged is less than the maximum legal rent specified in the annual certificate. (*Page Mill Management, LLC v. City of East Palo Alto* (Aug. 31, 2009, A121631) [nonpub. opn.].) The second, which also involves the method of calculating annual rent increases, remains pending before this court. (*Page Mill Management, LLC v. City of East Palo Alto* (A123885, app. pending).)

borne ultimately by tenants as well as landlords, not only its own costs in defending litigation, but also the fees incurred by prevailing landlords.[10]

In fact, we find the interpretation of the ordinance that Woodland Park urges to be unreasonable, because it would serve no readily apparent purpose. Under Woodland Park's interpretation, City would be able to recover its attorney fees if it were the prevailing *defendant* in a civil action, brought by a landlord, that alleges City violated the RSO. City would *not* be able to recover its attorney fees if it were the prevailing *plaintiff* in an action alleging that a landlord violated the RSO. We agree that the latter result, standing alone, could reflect the electorate's determination that City has other enforcement options available or that City has adequate incentive to enforce the law without fee shifting. However, Woodland Park offers no compelling explanation for the former implication or for why, under its interpretation, a landlord can recover attorney fees if it is the prevailing *plaintiff* in an action brought against City, but not if it is the prevailing *defendant* in an action brought by City under section 15.C of the RSO.

Although unilateral attorney fee provisions may be "created by legislators as a deliberate stratagem for advancing some public purpose, usually by encouraging more effective enforcement of some important public policy," we can discern no such purpose here. (*Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318, 324 [225 Cal.Rptr. 861].) Unlike the unilateral attorney fees provision at issue in *Covenant Mutual Ins. Co. v. Young*, the provision in this case does not restrict who may qualify as a prevailing party entitled to attorney fees. (*Id.* at pp. 321–322 [statute did not authorize attorney fees for defendants who succeed in showing they did not commit a breach of warranty of authority].) Woodland Park suggests no public purpose that would be advanced by restricting the availability of attorney fees to prevailing parties in suits *initiated* by either tenants or landlords, but not similarly restricting the parties defending such a suit. Woodland Park's interpretation would lead to an absurd result, and we agree with City that section 15.A.5 of the RSO should be construed so that "City neither gets the benefit of an award of attorneys fees when it prevails nor is exposed to an award of fees when it does not prevail."

---

[10] Prior to oral argument, we asked counsel to address the question of whether it would be appropriate for us to take judicial notice of ballot argument and related materials previously submitted by the City, without opposition by Page Mill Management, LLC, as Woodland Park was formerly known, in appeal No. A121631. Both parties now agree that these materials, originally represented as relating to the 1988 enactment of the RSO, in fact are from a 1984 referendum on the prior version of the RSO. While the City argues that the materials are nevertheless relevant to the issues before us, many of the arguments it now makes were not raised in its briefs and cannot be considered. We find only marginal relevance to those issues which were properly raised, and that consideration of these items is unnecessary to interpretation of the RSO provision in question. We will therefore not take judicial notice of these matters.

█ Woodland Park also contends that the trial court's interpretation of the ordinance must be upheld because any other interpretation would unconstitutionally deny it a fair return on its investment. (See *Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1021–1022 [103 Cal.Rptr.2d 711, 16 P.3d 130] [rent control laws generally constitutional if not "confiscatory" in depriving investors of a "fair return"].) Specifically, Woodland Park argues that, under City's interpretation, City could "repeatedly violat[e] a landlord's or tenant's rights, counting on the crushing burden of attorney fees to deny the landlord or tenant the opportunity or incentive to challenge the City's practices in court." Woodland Park points to section 12 of the RSO as demonstrating that the electorate did not intend for landlords to otherwise be able to recover such costs by passing them on to tenants through rent increases.[11] We cannot agree that this necessarily compels the fee shifting Woodland Park advocates.

It does not necessarily follow that bearing the burden of litigation costs will deprive all or most landlords of their constitutionally guaranteed fair return. (See RSO, § 11.A [providing automatic annual adjustment of rent based on change in consumer price index].) Recognizing as much, the Fourth District Court of Appeal held, in the context of a facial challenge to a rent control ordinance, that a city is not constitutionally required to include a landlord's attorney fees, incurred in connection with legal proceedings challenging the ordinance, as operating expenses when calculating the proper rent level. (*Oceanside Mobilehome Park Owners' Assn. v. City of Oceanside* (1984) 157 Cal.App.3d 887, 909–910 [204 Cal.Rptr. 239].) The court noted that "[t]he exclusion has no more of a 'chilling effect' on park owners' rights to pursue their legal remedies than does the traditional American rule denying litigant attorney fees in the absence of express authority. Further, the burden on park owners is likely to be less than on the tenants, because the park owners are able to treat these attorney fees as business deductions for income tax purposes." (*Ibid.*)[12]

█ We conclude that the intent of the electorate was that section 15.A.5 of the RSO authorize the recovery of attorney fees only in civil proceedings between landlords and tenants to enforce their respective rights under the RSO. Our conclusion is consistent with the RSO as a whole and the purposes to be achieved. No other provision of the RSO provides for an award of fees against the City. Accordingly, the trial court erred by awarding attorney fees to Woodland Park.

---

[11] Section 12 of the RSO provides that a landlord can claim "allowable legal expenses" as "operating expenses" for the purposes of individual rent adjustment proceedings. Section 12.C.2.d provides that "Attorney's fees and costs incurred in proceedings before the Board, or in connection with civil actions against the Board *are not allowable as Operating Expenses*." (Italics added.)

[12] We do not address recovery of attorney fees under 42 United States Code section 1983. (See *Galland v. City of Clovis, supra,* 24 Cal.4th at pp. 1009, 1028.)

### III. Disposition

The order, dated November 21, 2008, awarding attorney fees is reversed. City is to recover costs on appeal.

Jones, P. J., and Needham, J., concurred.