Filed 11/5/24  Keegan v. Halpern CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| MOLLY KEEGAN et al.,<br><br>        Plaintiffs and Appellants,<br>v.<br>NICOLE ALEXANDRA HALPERN,<br><br>        Defendant and Respondent. | A169399<br><br>(Alameda County<br>Super. Ct. No. 23CV045142) |

Appellants Molly Keegan and Michael Zajonc appeal a judgment in favor of respondent Nicole Alexandra Halpern after the trial court sustained her demurrer to appellants' unlawful detainer complaint without leave to amend, concluding the notice terminating Halpern's tenancy was defective because it did not include certain "safe harbor" information set forth in a regulation promulgated by the City of Oakland's Residential Rent Adjustment Board (the Board).  While the enabling ordinance establishes a defense in an unlawful detainer action for noncompliance with the ordinance's notice content requirements, the court erred by implicitly finding the regulation created a broader defense based on the failure to include in the termination notice content that is not required by either the ordinance or the regulation.  We therefore reverse.

1

# I. BACKGROUND

## A. *The Rent Adjustment Program and Measure EE*

The City of Oakland's Residential Rent Adjustment Program Ordinance (rent control ordinance) regulates most residential rent increases in the city and outlines the process for mediating rent disputes. (Oakland Mun. Code, § 8.22.010 et seq.)[1] It also establishes the Board. (§§ 8.22.020, 8.22.040.) Among the Board's duties is the development and adoption of regulations for "implementation" of the rent control ordinance. (§§ 8.22.020, 8.22.040, subd. (D)(2).) The Board is part of the Rent Adjustment Program (or RAP), which is defined by the rent control ordinance as the city department that "administers" the ordinance. (§ 8.22.020.)

To "strengthen and effectuate" the rent control ordinance, the city's Just Cause for Eviction Ordinance was adopted as initiative Measure EE at the general election in November 2002. (§ 8.22.320, subd. (2); *Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 749.) Measure EE was intended to "protect[] tenants against arbitrary, unreasonable, discriminatory, or retaliatory evictions," and it prohibits landlords from terminating a tenancy without good cause. (§§ 8.22.300, 8.22.330.) According to the ordinance, just cause eviction protections would help prevent landlords from using no cause evictions to evade the rent control ordinance. (§ 8.22.320, subd. (2).) To that end, Measure EE provides that a landlord may not evict a tenant except for one of the grounds enumerated therein. (§ 8.22.360, subd. (A).)

Measure EE also imposes certain content requirements for a notice terminating tenancy. (§ 8.22.360, subd. (B)(6).) When appellants sought to

---

[1] Undesignated statutory references are to the Oakland Municipal Code.

2

terminate Halpern's tenancy, these requirements included, as relevant here, "[a] statement that advice regarding the notice terminating tenancy is available from the Rent Board." (Former § 8.22.360, subd. (B)(6)(b).)[2]  The failure to include the required statements in the notice "shall be a defense to any unlawful detainer action." (§ 8.22.360, subd. (B)(6)(e).)

### B. Regulation B.6.b

The Board adopted regulation 8.22.360, entitled "Good Cause Required for Eviction." When appellants served Halpern with a notice terminating tenancy, section B.6.b (former Regulation B.6.b) of that regulation provided: "This regulation sets out the preferred language Landlords must insert into notices terminating tenancy or notices to cure or quit regarding advice from the Rent Program. As preferred language, the language used in this regulation is 'safe harbor' language that, if used by a Landlord in applicable notices, cannot be challenged by the Tenant as being not in compliance with . . . [section] 8.22.360[, subdivision] B.6.b. Other language imparting the same information may also be acceptable."

Former Regulation B.6.b continues in a separate subparagraph: "The following statement must be included in notices terminating tenancy or notices to cure or quit regarding advice from the Rent Program. 'Information regarding evictions is available from the City of Oakland's Rent Program.

---

[2] Section 8.22.360, subdivision (B)(6)(b) was amended in 2023, after appellants served Halpern with the notice terminating tenancy in 2022. (Oakland Ord. No. 13737.) Appellants ask us to take judicial notice of Oakland Ordinance No. 13737 because in Halpern's response brief, she refers to specific language the ordinance added to Measure EE. We grant appellants' unopposed request for judicial notice. We additionally note that Regulation 8.22.360 was amended in 2024. We refer to the ordinance and regulation as they existed when appellants sought to terminate Halpern's tenancy.

3

Parties seeking legal advice concerning evictions should consult with an attorney. The Rent Program is located at 250 Frank H. Ogawa Plaza, Suite 3315, Oakland, CA 94612, (510) 238-3501, website: www.oaklandnet.com. (as of January 2004.)' "

### C. Trial Court Proceedings

In September 2023, appellants filed an unlawful detainer suit against Halpern. The complaint attached the notice terminating tenancy that appellants served on Halpern a year earlier. The notice stated, among other things, that "[a]dvice concerning this Notice is available from the City of Oakland Residential Rent Adjustment Program, located at 250 Frank H. Ogawa Plaza # 5313, Oakland, CA 94612, and available by phone at (510) 238-3721."[3]

Halpern demurred to the complaint, arguing that the notice terminating tenancy failed to comply with former Regulation B.6.b because it did not include RAP's website or the advisement to consult an attorney if seeking legal advice. In opposition, appellants argued that they complied with the regulation because they provided sufficient contact information for a reasonable person to find RAP. They also noted that the uniform resource locator (URL) set forth in former Regulation B.6.b. was broken. They further contended that Halpern was equitably estopped from claiming the notice was inadequate because after she received the notice, she sought and obtained additional relocation assistance and an extension of eight months for the date of withdrawal of the unit. Finally, appellants argued that the Ellis Act (Gov.

---

[3] The suite number for RAP's address and the phone number included in the termination notice differ from that set forth in former Regulation B.6.b. Halpern did not challenge those portions of the notice in the trial court, and it appears the information may have been correct anyway based on the current version of Regulation B.6.b.

Code, § 7060 et seq.) preempted the notice requirement in Measure EE and former Regulation B.6.b.

The trial court sustained Halpern's demurrer without leave to amend. It concluded that while appellants were not required to use the language set forth in former Regulation B.6.b verbatim, their notice of termination was legally deficient because it did not provide Halpern with the URL for RAP's website or advise her to consult an attorney if seeking legal advice. The court entered judgment in favor of Halpern.

## II. DISCUSSION

### A. *Standard of Review*

We review the order sustaining the demurrer de novo. (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.) We assume the truth of all properly pleaded facts alleged in the complaint, but not conclusory factual or legal allegations contained therein. (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 504–505.) Additionally, we ignore the allegations that conflict with the content of the complaint's exhibits. (*Id.* at p. 505.) Appellants bear the burden of demonstrating that the trial court erred. (*Aguilera*, at p. 595.)

### B. *Former Regulation B.6.b Did Not Impose Additional Notice Content Requirements*

Appellants focus their briefing on the issues of whether former Regulation B.6.b exceeded the scope of the Board's rulemaking authority, whether the regulation was preempted by the Ellis Act, and whether they substantially complied with the regulation, but we turn first to the threshold issue of whether former Regulation B.6.b created notice content requirements in addition to those set forth in Measure EE that landlords must comply with to avoid a defense in an unlawful detainer proceeding. By sustaining

5

Halpern's demurrer on the ground that the notice terminating tenancy did not include the URL for RAP's website and language advising her to consult an attorney if seeking legal advice, the trial court implicitly concluded that it did. Reviewing former Regulation B.6.b de novo (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1234), we reach the opposite conclusion.

There is no dispute that appellants complied with former section 8.22.360, subdivision (B)(6)(b) of Measure EE by including in the notice "[a] statement that advice regarding the notice terminating tenancy is available from the Rent Board." (Former § 8.22.360, subd. (B)(6)(b).) The notice stated that "[a]dvice concerning this Notice is available from the City of Oakland Residential Rent Adjustment Program" (of which the Board is a part), and it also included RAP's phone number and address. On the face of Measure EE, appellants' termination notice was sufficient to avoid an unlawful detainer defense under the ordinance because Measure EE states only that the failure to include the statement required by the ordinance "shall be a defense to any unlawful detainer action." (§ 8.22.360, subd. (B)(6)(e).) Halpern did not claim otherwise in her demurrer.

Halpern contends, however, as she did in the trial court, that former section 8.22.360, subdivision (B)(6)(b) of Measure EE established a "floor" for the information that must be included in the notice terminating tenancy, and that former Regulation B.6.b created additional notice content requirements. Specifically, she points to the first and third sentences of former Regulation B.6.b as evidence of the Board's intent to require that termination notices include certain categories of information. Halpern appears to be arguing that appellants' failure to include in the termination notice all of the information set forth in former Regulation B.6.b's "preferred" language established a defense to their unlawful detainer complaint, even though

6

Measure EE does not require landlords to include that information in termination notices to prevent a defense. (§ 8.22.360, subd. (B)(6).) In other words, she is interpreting former Regulation B.6.b as creating a defense in unlawful detainer proceedings separate from or broader than the defense set forth in section 8.22.360, subdivision (B)(6) of Measure EE. We disagree with this interpretation.

In construing former Regulation B.6.b, our task is to determine the Board's intent in promulgating the regulation. (*Manriquez v. Gourley, supra*, 105 Cal.App.4th at p. 1235.) Generally, we apply the same rules governing interpretation of statutes to the interpretation of regulations. (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1097.) " 'We give the regulatory language its plain, commonsense meaning. If possible, we must accord meaning to every word and phrase in a regulation, and we must read regulations as a whole so that all of the parts are given effect. [Citation.] If the regulatory language is clear and unambiguous, our task is at an end, and there is no need to resort to canons of construction and extrinsic aids to interpretation. [Citation.]' . . . When [the agency's] intent 'cannot be discerned directly from the language of the regulation, we may look to a variety of extrinsic aids, including the purpose of the regulation, the legislative history, public policy, and the regulatory scheme of which the regulation is a part.' " (*Hoitt v. Department of Rehabilitation* (2012) 207 Cal.App.4th 513, 523, disagreed with on another ground by *State Farm General Ins. Co. v. Lara* (2021) 71 Cal.App.5th 148, 185, fn 19.)

Looking to the language of former Regulation B.6.b, the first sentence states that the regulation "sets out the preferred language Landlords *must* insert into notices terminating tenancy or notices to cure or quit regarding advice from the Rent Program." (Italics added.) Halpern appears to focus on

7

this sentence and its use of the term "must" as support for her argument that former Regulation B.6.b created an unlawful detainer defense based on the failure to include in the notice terminating tenancy the additional information set forth in the regulation's preferred language.

We acknowledge that former Regulation B.6.b's first sentence, when read in isolation, is arguably ambiguous as to whether the Board intended to require landlords to include the regulation's preferred language in notices terminating tenancy. However, basic principles of statutory construction require us to interpret the regulation as a whole so as to " 'determine its scope and purpose and to harmonize the various parts of the enactment.' " (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 381; see *County of Sacramento v. Pacific Gas & Electric Co.* (1987) 193 Cal.App.3d 300, 309 ["[T]he plain meaning rule does not compel rote application of the common meaning of words without regard to the context in which they are used."].)

When the first sentence of former Regulation B.6.b is viewed together with the rest of the regulation, it becomes clear that the regulation merely creates one way in which landlords can comply with former section 8.22.360, subdivision (B)(6)(b) of Measure EE.

The next sentence in former Regulation B.6.b clarifies that "preferred language" means " 'safe harbor' language that, if used by a Landlord in applicable notices, cannot be challenged by the Tenant as being not in compliance with [section] 8.22.360[, subdivision] B.6.b." The plain meaning of this sentence establishes that use of the "preferred language" referred to in the preceding sentence does no more than allow landlords to avoid an unlawful detainer defense based on noncompliance with former section 8.22.360, subdivision (B)(6)(b) of Measure EE. Nowhere does the regulation expressly state the inverse, that the failure to include the preferred language

8

in a termination notice provides a defense in unlawful detainer proceedings. That this sentence says use of the preferred language prevents a defense under section "8.22.360[, subdivision] B.6.b" suggests instead that the regulation itself was not intended to create an unlawful detainer defense separate from or broader than that provided in Measure EE. Had the Board intended to create a defense based on noncompliance with the preferred language, it could have easily said so. (See *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 520 [had the Legislature "wanted to authorize a motion to dismiss . . . without invoking" a specified statute "it could easily have done so simply by deleting" reference to that statute].)

The third and final sentence in the first paragraph of former Regulation B.6.b states, "Other language imparting the same information may also be acceptable." Because the preceding sentence establishes that the purpose of the regulation's "preferred language" is to provide safe harbor protection to landlords, the phrase "[o]ther language imparting the same information may also be acceptable" appears to specify that other language may also provide safe harbor protection.

Significantly, the plain meaning of former Regulation B.6.b's third sentence—that language other than the regulation's preferred language may be acceptable under the regulation—is irreconcilable with a conclusion that the regulation's first sentence was intended to mandate inclusion of the preferred language in termination notices to prevent a defense in unlawful detainer proceedings. Construing those sentences together and in context of the entire regulation, a more logical reading of the first sentence is that landlords must include the preferred language in notices terminating tenancy to guarantee they receive safe harbor protection under the regulation. Such a construction internally harmonizes former Regulation B.6.b (*Dyna-Med, Inc.*

9

*v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [statutes must be harmonized where possible], superseded by statute on another issue) and gives meaning to the phrase "may also be acceptable" in the third sentence—contrasted with the first sentence's use of "must"—by suggesting that using other language in termination notices does not ensure safe harbor protection (*Sonoma County Bd. of Education v. Public Employment Relations Bd.* (1980) 102 Cal.App.3d 689, 701 ["significance should be given to every word, phrase, sentence, and part of an act"]).

After this first paragraph in former Regulation B.6.b is a subparagraph that sets forth the regulation's preferred language, which includes the URL for RAP's website and language advising parties to consult an attorney if seeking legal advice. Mirroring the first sentence of the previous paragraph, this subparagraph begins, "The following statement must be included in notices terminating tenancy or notices to cure or quit regarding advice from the Rent Program." The placement of this language in a subparagraph with the regulation's preferred language after having already established that the purpose of the preferred language is to provide safe harbor protection supports an inference that this sentence was merely intended to make explicit that landlords must use the preferred language to guarantee that they receive safe harbor protection under the regulation. (See *Woodland Park Management, LLC v. City of East Palo Alto Rent Stabilization Bd.* (2010) 181 Cal.App.4th 915, 923, fn. 5 [where the intended application of a statute is doubtful, "organization . . . may properly be considered in determining intent"].)

In sum, former Regulation B.6.b, when read as a whole, does not create a defense different from that set forth in section 8.22.360, subdivision (B)(6)(e) of Measure EE and instead provides one way—but not

10

the only way—in which landlords can comply with former section 8.22.360, subdivision (B)(6)(b) of the ordinance. In reaching that determination, we achieve harmony between the various parts of former Regulation B.6.b, and every word and phrase serves a function.

Further, it is a fundamental rule of construction that courts " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' " (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 106, abrogated on another ground by *People v. Lewis* (2021) 11 Cal.5th 952, 961–962; accord, *Coso Energy Developers v. County of Inyo* (2004) 122 Cal.App.4th 1512, 1527, 1528 [courts should adopt an interpretation that avoids "absurd consequences"]; *Woodland Park Management, LLC v. City of East Palo Alto Rent Stabilization Bd.*, *supra*, 181 Cal.App.4th at p. 920 [same].)

Halpern's proposed construction would lead to such results. This is because former Regulation B.6.b's preferred language does not include a statement that "*advice regarding the notice terminating tenancy* is available from the *Rent Board*," as required by Measure EE for notices terminating tenancy. (Former § 8.22.360, subd. (B)(6)(b), italics added.) Instead, former Regulation B.6.b's preferred language is much broader, stating that " *'[i]nformation regarding evictions* is available from the City of Oakland's *Rent Program.*' " (Italics added.) Under Halpern's interpretation of former Regulation B.6.b, a tenant may have a defense in an unlawful detainer action on the ground that the termination notice failed to include this specific language, even if the notice contained a statement that advice regarding the notice terminating tenancy is available from the Rent Board. The Board could not have intended such an absurd result. Although former

11

Regulation B.6.b states that "[o]ther language imparting the same information may also be acceptable," courts will not necessarily conclude that a statement that "advice regarding the notice terminating tenancy is available from the Rent Board" imparts the same information as the regulation's preferred language, given the breadth of the latter. (Former § 8.22.360, subd. (B)(6)(b).) Accordingly, we assume the Board did not intend to create an unlawful detainer defense based on noncompliance with former Regulation B.6.b.

Because we conclude that former Regulation B.6.b does not establish an unlawful detainer defense based on the failure to include in the notice terminating tenancy the information set forth in the regulation's preferred language, and because it is undisputed that appellants complied with Measure EE's notice content requirements, we must reverse the trial court's order sustaining Halpern's demurrer without leave to amend.[4]

### III. DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to vacate its November 13, 2023 order sustaining without leave to amend Halpern's demurrer to the complaint and to enter a new order overruling the demurrer. Appellants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

---

[4] Given our determination that former Regulation B.6.b did not create an additional unlawful detainer defense, we need not specifically address other issues in appellants' briefing regarding whether former Regulation B.6.b exceeded the scope of the Board's rulemaking authority or whether the regulation was preempted by the Ellis Act.

12

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A169399
*Keegan v. Halpern*